UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-mj-03800-Hernandez

UNITED STATES OF AMERICA

v.

RENE QUINTANA and
YANSEL HERNANDEZ,
_______________________________/

FILED BY JP D.C.

Oct 3, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## CRIMINAL COVER SHEET

1. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

3. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 3, 2026? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Brandy Brentari Galler during her tenure at the U.S. Attorney's Office, which concluded on July 30, 2026? No

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By: */s/ Lindsey Maultasch*
Lindsey Maultasch
Assistant United States Attorney
Court ID No. A5502705
99 N.E. 4th Street
Miami, FL 33132
(305) 961-9115
Lindsey.Maultasch@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.

RENE QUINTANA and
YANSEL HERNANDEZ,

*Defendants*

Case No. 1:26-mj-03800-Hernandez

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of Sept. 29, 2026 - Oct. 2, 2026 in the county of Miami-Dade in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1201 | Conspiracy to Kidnap |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

*Complainant's signature*

Gary M. Jones, Special Agent, FBI #102495
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by FaceTime.

Date: 10/3/2026

*Judge's signature*

City and state: Miami, Florida

Honorable Yeney Hernandez, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Gary M. Jones, having been duly sworn, hereby depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), currently assigned to the Violent Crimes and Fugitive Task Force of the FBI's Miami Division. My duties involve investigating various violations of federal offenses, including bank robberies, Hobbs Act robberies, extortions, kidnappings, and other violations of federal law. I have been an FBI Special Agent since April 2023 and have been assigned to the Miami Division since September 2023. Before joining the FBI, I worked as a local law enforcement officer for Lake County Sheriff's Office in Illinois for approximately three years and Hoffman Estates Police Department in Illinois for approximately three years responding to a variety of crimes. As part of my professional duties and responsibilities, I have become familiar with the investigative methods and enforcement of violent crimes pertaining to state and federal laws. I have also become versed in methodologies and practices employed by individuals and groups who commit violent crimes.

2. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, federal offenses, including but not limited to offenses involving narcotics related offenses, including violations of Titles 18 and 21 of the United States Code. I am authorized to apply for and execute both search warrants and arrest warrants for offenses enumerated in Titles 18 and 21 of the United States Code.

3. The information set forth in this Affidavit is provided in support of the attached criminal complaint charging **Rene QUINTANA** ("**QUINTANA**") and **Yansel HERNANDEZ**

("**HERNANDEZ**") with Conspiracy to Kidnap, in violation of Title 18, United States Code, Section 1201(c) (hereinafter, the "TARGET OFFENSE").

4. The statements contained in this Affidavit are based upon my personal knowledge, as well as information provided to me by other law enforcement officers. This Affidavit does not include every fact and circumstance known to me, but only the facts and circumstances that I believe are sufficient to establish probable cause that **QUINTANA** and **HERNANDEZ** committed the TARGET OFFENSE. As such, it does not include every fact known to law enforcement about this investigation.

**PROBABLE CAUSE**

5. On or about September 29, 2026, the Miami Dade Sheriff's Office responded to a report of a kidnapping of a male with the initials "A.Q." A.Q. (the "VICTIM") departed from his residence located on Southwest 66th Street in Miami, Florida at approximately 11:35 a.m. in a Ford pickup truck (the "Ford"). The VICTIM then arrived at Pinch a Penny Pool Patio Spa ("Pinch a Penny") located at 11035 Southwest 40th Street, Miami, Florida, at approximately 11:51 a.m. At this time, the VICTIM spoke with his family telephonically.

6. After recovering security footage at Pinch a Penny, law enforcement officials of the FBI observed the VICTIM inside Pinch a Penny purchasing a MX6 Elite Pool Cleaner at approximately 11:55 a.m. A photograph of this security footage is below:




*The VICTIM (left), purchasing the pool cleaner (box to right of VICTIM).*

Law enforcement was not able to view surveillance footage of the Ford (driven by the VICTIM) in the parking lot as the Ford was out of view of the surveillance camera.

7. Surveillance video then showed the VICTIM exiting the Pinch a Penny at approximately 11:58 a.m. However, the surveillance video never showed the Ford leaving the Pinch a Penny parking lot.

8. When your Affiant and law enforcement officers responded to the Pinch a Penny on or about September 29, 2026, the Ford was still in the Pinch a Penny parking lot. Law enforcement further discovered a sales receipt from Pinch a Penny on the ground next to the passenger side of the Ford. The sales receipt was billed to the VICTIM for the purchase of a pool cleaner. The MX6 Elite Pool Cleaner was found in the bed of the VICTIM's Ford. Photographs of the VICTIM's receipt and the pool cleaner in the bed of the Ford are below:







9. Upon further review of the Pinch a Penny surveillance video, law enforcement determined an unknown gray sedan (the "SUBJECT VEHICLE") entered the Pinch a Penny parking lot after the VICTIM (driving the Ford) entered the Pinch a Penny parking lot at approximately 11:53 a.m. The surveillance footage also showed that, after the VICTIM exited the business, the SUBJECT VEHICLE exited the Pinch a Penny parking lot and merged onto Westbound traffic on Southwest 40th Street. A photograph of the SUBJECT VEHICLE leaving the Pinch a Penny parking lot is below:



10. After accessing License Plate Reader ("LPR") databases, law enforcement observed an LPR image of a gray Chrysler 200, bearing Florida registration EC83BS (the "Chrysler"), traveling westbound on Southwest 40th Street at approximately 12:00:56 p.m. The LPR image captured of the Chrysler is approximately half a mile west of the VICTIM's last known location—the Pinch a Penny. The LPR image of the Chrysler is below:



11. Subsequently on or about September 29, 2026, at approximately 7:26 p.m., L.Q., the VICTIM's son, received a call from an unknown person with a blocked number ("Subject 1"). The audio on the phone call was not clear, and Subject 1, a male, was speaking rapidly. However, L.Q. was able to hear Subject 1 say "$3,000,000," "dad," and "child." Subject 1 hung up before L.Q. could respond.

12. Eight (8) minutes later, at approximately 7:34 p.m., L.Q. received a text from telephone number **(561) 397-2911 (the "561 Number")**. The text, in Spanish, stated that the texter from the **561 Number** had the VICTIM. The texter of the **561 Number** also referred to a 15-year debt in the text message.

13. Subsequently, at approximately 8:18 p.m., L.Q. received a text message from telephone number **(615) 785-6302 (the "615 Number")**. The text, again in Spanish, requested $3,000,000. The unknown texter of the **615 Number** stated that the texter knew L.Q.'s businesses, properties, and family members. The texter of the **615 Number** then told L.Q. that he would be contacted within 48 hours to meet in West Palm Beach, Florida. The user of the **615 Number** told L.Q. he was to go alone to this meeting and further instructed that he was not to contact the police or place GPS devices in any currency.

14. On or about October 1, 2026, at approximately 3:30 PM, L.Q. received a third text message in Spanish from **(561) 970-3870 (the "3870 Number")**. The user of the **3870 Number** said that because L.Q. contacted the police, the ransom was now $4,000,000; that the VICTIM loves L.Q. and knows the money can be obtained; and that L.Q. must arrive in a blue Hyundai to deliver the money in West Palm Beach, Florida. Law enforcement confirmed L.Q. owns a blue Hyundai.

15. At approximately 8:01 PM, L.Q. received a blocked call that law enforcement determined to be from phone number **(561) 595-8267 (the "8267 Number")**. The call, in Spanish, was a demand for money and stated that if L.Q. had the money, the caller from the **8267 Number** would provide proof of life.

**THE CONSPIRACY PHONES ARE ASSOCIATED WITH TEXT MESSAGES TO VICTIM'S FAMILY**

16. After exigent legal process to determine the origin of two of the phone numbers,[1] law enforcement determined both the **561 Number** and the **615 Number** (the "CONSPIRACY PHONES") were purchased at a Walmart located at 9300 Northwest 77th Avenue in Hialeah, Florida (the "Walmart"). The phones bearing IMEI 350207709086711 (the **615 Number**) and IMEI 350207709169582 (the **561 Number**) were purchased at the Walmart on or about June 30, 2026, and on or about July 1, 2026, respectively. As a result, law enforcement obtained video surveillance from Walmart for on or about June 30 and July 1, 2026.

17. The video surveillance showed that, on or about June 30, 2026, at approximately 6:36 p.m., a black Honda sedan (the "black Honda Sedan") enters the parking lot of Miami Pizza, located at 7801 Northwest 95th Street, Hialeah Gardens, Florida, which is to the north of Walmart. An unknown male ("UM1") exited the passenger side of the black Honda Sedan and entered the Walmart. UM1 then attempted to purchase a cellular device but left the Walmart before doing so. The video surveillance then showed two additional unknown males ("UM2" and "UM3") exited the black Honda Sedan and entered the Miami Pizza at approximately 6:45 p.m. UM1 is then seen entering the Miami Pizza where he remained for 10 minutes, before returning to Walmart.

18. Video surveillance then showed that UM1 purchased a cellular phone with cash at the Walmart at approximately 7:06 p.m. After purchasing the cellular phone, UM1 then is seen joining UM2 and UM3 at Miami Pizza. At approximately 7:24 p.m., all three men (UM1, UM2,

---

[1] The exigent legal process was approved by a Deputy Assistant Attorney General in the Department of Justice on September 30, 2026. Applications for Court Orders under 18 U.S.C. § 3125 as a result of the exigent legal process were signed by the Court October 1, 2026, *see S.D. Fla.* case numbers 26-mj-03788-Sanchez and 26-mj-03789-Sanchez.

and UM3) exited Miami Pizza and entered the black Honda Sedan; which then departed northbound on 79th Avenue.

19. Law enforcement also obtained a copy of the receipt from Walmart of the purchase of the cellular telephone by Carbajal on or about June 30, 2026. A photograph of the receipt is below:


Walmart
Save money. Live better.
WM Supercenter
305-819-0672 Mgr:PAVEL
9300 NW 77TH AVE
HIALEAH FL 33016
ST# 02814 OP# 000223 TE# 67 TR# 09327
PRODUCT SERIAL #
8403502077090867 11
POP# 867068447463203949 31990
ST BLU FLIP 061696053012 29.88 X
ST 35 UNL C 061696043307 35.00 T
E-911 FEE 060538817725 0.40 O
SUBTOTAL 65.28
TAX 1 7.000 % 4.54
TOTAL 69.82
CASH TEND 100.00
0 MINUTES
ROUNDING 0.02
CHANGE DUE 30.20
# ITEMS SOLD 3
TC# 0927 7718 9328 2791 0731
06/30/26 19:06:29
****** RETURN & EXCHANGE POLICY ******
Wireless phones may be returned for refund or exchange with receipt WITHIN 14 DAYS.Verizon Wireless postpaid WITHIN 30 DAYS.
**************************************

Law enforcement conducted further investigation into the phone purchased by Carbajal. Walmart confirmed that IMEI 350207709169582, associated with the **561 Number** (one of the CONSPIRACY PHONES), was purchased and activated on or about June 30, 2026—the same date when Carbajal purchased a cell phone at the Walmart. Furthermore, Walmart confirmed that IMEI 350207709086711, associated with the **615 Number** (the second CONSPIRACY PHONE), was purchased at the Walmart on or about July 1, 2026.

20. Law enforcement also conducted further investigation at Miami Pizza, where Miami Pizza personnel produced a receipt for purchase from on or about June 30, 2026, at approximately 6:48 p.m.—the time UM2 and UM3 were in the Miami Pizza. Because Miami Pizza employees ask for name and phone numbers with transactions for potential discounts, the receipt contained a name, "Rene," and phone number for "Rene"—**(786) 270-9115 (the "9115 Number")**. A photograph of the Miami Pizza receipt is below:




Through open-source database searches associated with the **9115 Number**, law enforcement determined "Rene's" full name is **Rene QUINTANA ("QUINTANA")**.

21. Utilizing cell phone data provided by the exigent legal process previously discussed above, law enforcement focused on locations associated with the **QUINTANA**'s cellular telephone, which is associated with the **9115 Number** ("**QUINTANA**'s Phone") and the CONSPIRACY PHONES used to contact L.Q. about the VICTIM. The cell phone data confirmed

**QUINTANA**'s Phone was present in the immediate vicinity of Walmart on or about June 30, 2026, and on or about July 1, 2026, during the purchase of the CONSPIRACY PHONES.

22. Law enforcement also attempted to identify the black Sedan used to transport Carbajal (UM1), UM2, and UM3. After identifying **QUINTANA**, surveillance was conducted at his registered address ("**QUINTANA**'s Residence"). During surveillance, law enforcement observed two black sedans in the vicinity of **QUINTANA**'s Residence: (1) a black Chevrolet sedan registered to **QUINTANA**, and (2) the black Honda Sedan, discussed above. The black Honda Sedan is registered to **Yansel HERNANDEZ**. The black Honda Sedan's registration was issued on or about November 13, 2023, and **HERNANDEZ** has been its only registered owner. Photographs of the black Honda Sedan are below:





23. Furthermore, law enforcement discovered that, on or about April 2, 2026, Miami Dade Sheriff's Office issued citations to **HERNANDEZ** and **QUINTANA** for trespassing at the same location at the same time. This incident demonstrates that **HERNANDEZ** and **QUINTANA** are known to one another and are associates.

24. Finally, analysis of the cell phone data of **HERNANDEZ**'s Phone (786-227-4784) (hereinafter referred to as "**HERNANDEZ**'s Phone") obtained from the exigent legal process placed it in the immediate vicinity of the Pinch a Penny at the time of the TARGET OFFENSE, on or about September 29, 2026, as more fully explained below.

**PHONE DATA ANALYSIS**

25. Based on my training and experience, I know criminals will often carry their cell phones with them before, during, and after the commission of a crime. To execute a conspiracy, multiple subjects will coordinate over time to prepare, purchase the cell phones, and execute their scheme. Further, based on my training and experience, I know that individuals involved in criminal activity regularly maintain multiple phones and change their phones after incidents that may draw law enforcement scrutiny.

26. Utilizing cell phone data provided by the exigent legal process previously discussed above, law enforcement focused on several key locations associated with **QUINTANA's** Phone, **HERNANDEZ**'s Phone, and the CONSPIRACY PHONES (collectively, the "Phones"). As described below, the data revealed that the Phones were communicating with one another prior to the TARGET OFFENSE; were co-located in key areas related to the TARGET OFFENSE and **QUINTANA**'s Residence on the day of the TARGET OFFENSE; and have consistently visited **QUINTANA**'s Residence in the days following the TARGET OFFENSE.

a. The **QUINTANA**, **HERNANDEZ**, and CONSPIRACY PHONES are in Communication in the Days Leading Up to the TARGET OFFENSE

27. Historical toll records indicate that on or about September 28, 2026—the day before the TARGET OFFENSE—**QUINTANA** and **HERNANDEZ** engaged in a phone call using the **QUINTANA** Phone and the **HERNANDEZ** Phone. However, after on or about September 28, 2026, there are no further phone calls documented in the toll records for either the **QUINTANA** Phone or the **HERNANDEZ** Phone. Based on my training and experience, a lack of communication between subjects does not mean they are not in contact. Subjects will utilize encrypted phone applications—such as Telegram or WhatsApp—to make phone calls and send text messages without oversight from traditional phone carriers.

28. Further analysis of the cell phone data previously discussed above showed that on or about June 30, 2026, and on or about July 1, 2026—the days on which the CONSPIRACY PHONES were purchased—**QUINTANA**'s Phone was present in the direct area of the Walmart. Specifically, the data showed **QUINTANA**'s Phone was in the area of the Walmart at the time the Walmart receipt previously discussed above showed the CONSPIRACY PHONES were purchased.

b. **QUINTANA and HERNANDEZ**'s Phones are Located in the Immediate Vicinity of the Pinch a Penny on the Date of the TARGET OFFENSE

29. Moreover, on or about September 29, 2026, at approximately 11:59 a.m.—the time the VICTIM was kidnapped—both **QUINTANA**'s and **HERNANDEZ**'s Phones were present in the immediate vicinity of the Pinch a Penny, as demonstrated below:




VICTIM phone in Green, **HERNANDEZ**'s Phone in Brown, **QUINTANA**'s Phone in purple, all in the direct area of Pinch a Penny in the timeframe of the TARGET OFFENSE.

c. **QUINTANA**'s Phone, **HERNANDEZ**'s Phone, and the CONSPIRACY PHONES are Co-located in the Same Areas in Miami-Dade County After the TARGET OFFENSE

30. The cell phone data showed that after the commission of the TARGET OFFENSE, one of the CONSPIRACY PHONES, the **561 Number**, was co-located in the same area with **QUINTANA's Phone** at approximately 3:46 p.m. Moreover, the data showed **QUINTANA** and

**HERNANDEZ**'s Phones were in the same direct area at approximately 5:59 p.m., almost six hours after the TARGET OFFENSE. The cell phone data further revealed the **561 Number** had a similar path of travel over the same period of time as **QUINTANA**'s Phone at approximately 7:16 p.m.

31. At approximately 8:18 p.m., the cell phone data revealed the other CONSPIRACY PHONE, the **615 Number**, was present south of the area of Dolphin Mall (11401 Northwest 12th Street in Miami, Florida). At the same time—8:18 p.m.—cell phone data showed **QUINTANA**'s Phone was present at the same approximate time at the same place, as shown below:



*Conspiracy phone (red), **QUINTANA** phone (purple)*

This co-location occurred after contact was made with L.Q. on or about September 29, 2026 using the **615 Number**.

d. <u>**QUINTANA**'s Phone and **HERNANDEZ**'s Phone Have Consistently Been Located in the Area of **QUINTANA**'s Residence after the TARGET OFFENSE</u>

Additionally, **HERNANDEZ**'s Phone has been located in the direct area of **QUINTANA**'s Residence seven (7) times from on or about between September 28, 2026, and September 29, 2026. Likewise, **QUINTANA**'s Phone has been located in the direct area of **QUINTANA**'s Residence from on or about between September 28, 2026, and September 30, 2026, on nine (9) separate instances.

## ARREST OF RENE QUINTANA AND YANSEL HERNANDEZ

32. Law enforcement conducted a review of LPR databases focusing around **QUINTANA**'s Residence. On or about September 30, 2026, a gray 2024 Honda Accord bearing Florida license plate AY20SU (the "Honda") was parked at the property. The vehicle is registered to "J.M." A review of law enforcement databases shows that J.M. travelled out of the United States on or about September 26, 2026, and has not yet returned. On or about October 1, 2026, the same Honda was present once again at **QUINTANA**'s Residence.

33. On or about October 2, 2026, while conducting physical surveillance at **QUINTANA**'s Residence, law enforcement observed the Honda driving past **QUINTANA**'s Residence multiple times. Based on my training and experience, I know surveillance conscious criminals will often drive around their intended address multiple times to see if any vehicles follow them.

34. Law enforcement followed the Honda through the surrounding neighborhood. Law enforcement confirmed the vehicle was occupied by two Hispanic males. The vehicle stopped and the occupants exited the vehicle. While setting up a perimeter to find the occupants of the vehicle, law enforcement observed **HERNANDEZ** and **QUINTANA** walking on foot. **HERNANDEZ** and **QUINTANA** were taken into custody.

35. **HERNANDEZ** and **QUINTANA** were searched incident to arrest and neither had a cell phone with them. A search of a bag that had been carried by **QUINTANA** revealed a SIM card holder with a phone number, and a receipt. The receipt had a handwritten phone number:

(561) 595-8267 (the **8267 Number**) (seen below highlighted in blue). That is the same phone number that was used to call the VICTIM's family on or about October 1, 2026.






36. On or about October 3, 2026, the VICTIM was rescued by law enforcement.

[This Section Intentionally Left Blank]

## CONCLUSION

37. Based on the above facts, I respectfully submit that there is probable cause to support a criminal complaint charging **Rene QUINTANA** and **Yansel HERNANDEZ** with Conspiracy to Kidnap, in violation of Title 18, United States Code, Section 1201(c).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

102495
GARY M. JONES
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by Telephone this 3rd day of October 2026.

HONORABLE YENEY HERNANDEZ
UNITED STATES MAGISTRATE JUDGE